# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| JOSE PEREZ | § | |
| | § | |
| V. | § | CASE NO. 4:05CV464 |
| | § | (Judge Schneider/Judge Bush) |
| UNIVERSITY OF NORTH TEXAS | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Before the Court is Defendant's Motion for Judgment on the Pleadings (Docket # 15). Having considered the motion, Plaintiff's response, and Defendant's reply, the Court finds as follows.

### History

Plaintiff, a Cuban, Hispanic Male, is a tenured professor in the Department of Physics at the University of North Texas. Plaintiff alleges that in the Summer of 2002, he conducted research which resulted in a patent, but credit for the research was given to Professors James Roberts and Timothy Imholt, both of whom are white males. After not receiving research credit, Plaintiff filed a complaint with Dr. Floyd McDaniel, the interim chair of the physics department, on January 23, 2004. Dr. McDaniel strongly discouraged Plaintiff from filing the grievance. Professor Roberts filed allegations of scholarly misconduct against Plaintiff on January 27, 2004, and Professor Imholt filed similar allegations against Plaintiff on January 28, 2004. At the time the Complaint was filed, no decision had been made regarding the allegations against Plaintiff. Plaintiff attempted to lodge a counter-complaint against Professors Roberts and Imholt, but was not allowed to do so by Dr. Chestnut, a white male.

Plaintiff alleges that Defendant again refused to investigate Plaintiff's counter-complaint against Professors Roberts and Imholt in January of 2005. Plaintiff claims that in February, 2005 he realized he was given a lower salary adjustment than non-Hispanic, non-Cuban professors. Further, Plaintiff alleges that since September, 2003, he has only been given standard raises with his promotions, whereas non-Hispanic, non-Cuban professors were given both standard raises and additional raises with their promotions.

On April 7, 2005, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that he was discriminated against based on his national origin. The Charge alleges that Plaintiff had been discriminated against since 2003 in that he was given lower pay raises than other professors, that in January, 2005, the University failed to investigate Plaintiff's counter-complaint of scholarly misconduct, and that in February, 2005, Plaintiff discovered that he was given a lower pay raise than other professors. The EEOC issued Plaintiff a Right to Sue letter on September 1, 2005. Plaintiff filed his Complaint in this Court on December 1, 2005 alleging race and national origin discrimination under Title VII, 42 U.S.C. § 2000e, *et seq*. Defendant filed its Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) on May 19, 2006.

## Standard

A Rule 12(c) motion for judgment on the pleadings based on failure to state a claim for which relief can be granted is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *See Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999); *see also R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs*, 335 F.3d 643, 647 (7th Cir. 2003). The difference is that a Rule 12(c) motion can be filed after responsive pleading is closed. *Id.* Rule 12(c) motions are

appropriate where, as here, the material facts are not in dispute and only legal questions remain. *Herbert Abstract Co., Inc. v. Touchstone Properties, Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990).

Prior decisions of both the United States Supreme Court and the Fifth Circuit Court of Appeals have made it clear that motions to dismiss for failure to state a claim upon which relief can be granted should not be granted lightly. For a complaint to be dismissed for failure to state a claim, it must appear "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Reeves v. City of Jackson, Mississippi*, 532 F.2d 491 (5th Cir. 1976).

Absent a claim which is obviously insufficient, a court should not grant a Rule 12(b)(6) motion to dismiss, thereby denying the plaintiff an opportunity to develop facts to support his complaint. Moreover, sufficient procedures are available to defendants to seek summary disposition of a lawsuit after a plaintiff has been afforded some opportunity to develop facts to support his complaint. *Reeves*, 532 F.2d at 494.

### **Limitations**

Defendant first moves to dismiss claiming that many of the alleged acts of discrimination occurred beyond the applicable limitations period. In order to maintain a Title VII claim in Texas, a Plaintiff must file a charge of discrimination within 300 days of the alleged act of discrimination. 42 U.S.C. § 2000e-5(e)(1); *Webb v. Cardiothoracic Surgery Assocs. of N. Tex., P.A.*, 139 F.3d 532, 537 (5th Cir. 1998). Any acts occurring more than 300 days prior to the filing of an EEOC charge cannot generally be the basis of a Title VII lawsuit. *Id.* The 300 day period begins to run when an employee receives notice of discriminatory action or when facts supporting a cause of action are or should be apparent. *Conway v. Control Data Corp.*, 955 F.2d

358, 362 (5th Cir. 1991).

Plaintiffs may sue on discriminatory acts occurring more than 300 days prior to the filing of their charge only if they establish a continuing violation. *Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir. 1998). In order to plead a continuing violation, a plaintiff must plead a series of discriminatory acts, one or more of which falls within the limitations period. *Id.* The purpose of the doctrine is to allow plaintiffs to surpass the limitations period when there is a continuing system of discriminatory practices that manifest themselves over time, and a reasonable person would not have become aware of the discrimination until some point within the limitations period. *Id.* at 238-39. The Court must consider whether: (1) the acts involve the same type of discrimination, tending to connect them as a continuing violation; (2) the alleged acts were recurring or isolated; and (3) the acts have the degree of permanence which would alert a reasonable person of his duty to assert his rights or of the continuing existence of adverse consequences, without being dependent upon a continuing intent to discriminate. *Id.* at 239.

Plaintiff filed his EEOC Charge on April 7, 2005. Therefore, absent a continuing violation, any acts occurring prior to June 11, 2004 would be barred from suit. The only acts of discrimination alleged in the Complaint which fall outside of the 300 day limitations period are: (1) that in the Summer of 2002, Plaintiff conducted research for a patent but was not given credit; (2) Defendant has delayed making a decision regarding Professors Roberts and Imholt's allegations against Plaintiff of scholarly misconduct; (3) Plaintiff was not allowed to bring a counter-complaint of scholarly misconduct against Professors Roberts and Imholt; and (4) since September, 2003, Plaintiff was only given standard raises, whereas white professors were given both standard raises and additional raises. These actions are presumably linked to the allegations

that in January, 2005, Defendant again refused to investigate Plaintiff's counter-complaint; and that in February, 2005, Plaintiff discovered that he was given a lower salary adjustment than other professors.

The Court finds that two separate types of discrimination are alleged. The first involves the denial to Plaintiff of additional pay raises which were given to non-Hispanic, non-Cuban professors, and the second involves the denial of credit for research and the complaints and attempted counter-complaints of scholarly misconduct that followed. As to the discriminatory denial of pay raises, the Court finds that these actions, if the facts as pleaded by Plaintiff are true, are the type of isolated incidents which should have put Plaintiff on notice that he was being discriminated against. Although Plaintiff does not state how many additional pay raises were given to non-Hispanic professors but denied to him between September, 2003 and February, 2005, the Court finds that each such incident should have put Plaintiff on notice that he had a cause of action. *See Huckabay,* 142 F.3d at 239-40. The Court will therefore not consider any denied pay raises prior to June 11, 2004.

As to the denial of credit for research and the subsequent complaints and attempted counter-complaints, the Court finds that these incidents are so related as to constitute a continuing violation. Furthermore, the acts seem to be recurring and continuing, as is evidenced by the allegation that Defendant has delayed in ruling on the complaints of scholarly misconduct and has repeatedly refused to investigate Plaintiffs' counter-complaint. Finally, none of these incidents, by themselves, are of such permanence or magnitude as would alert Plaintiff to the fact that he was being discriminated against or had a right of action. The acts are far more subtle than the denial of pay increases and would not necessarily, individually, put Plaintiff on notice that he was

being treated differently because of his race or national origin. The Court therefore finds that Plaintiff has alleged a continuing violation regarding these acts, and will consider all allegations stemming from the denial of research credit.

### Ultimate Employment Decision

Defendant next alleges that Plaintiff has failed to plead a *prima facie* case of discrimination. In order to plead a *prima facie* case of discrimination, Plaintiff must show that: (1) he was a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) others similarly situated were treated more favorably. *Urbano v. Cont'l Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir. 1998). Defendant contends that Plaintiff has failed to establish that he suffered any adverse employment action.

Title VII is designed to address ultimate employment decisions, and not every act that might have some effect on those decisions. *Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 878 (5th Cir. 1999). Ultimate employment decisions include such acts as hiring, firing, granting leave, promoting, and compensating. *Messer v. Meno*, 130 F.3d 130, 140 (5th cir. 1997); *Dollis v. Rubin*, 77 F.3d 777, 782 (5th Cir. 1995). Title VII explicitly prohibits employers from discriminating based on race or national origin with respect to compensation and terms, conditions, or privileges of employment. 42 U.S.C. 2000e-2(a). However, events such as disciplinary filings and supervisors' reprimands do not amount to ultimate employment decisions. *Messer*, 130 F.3d at 140 (failure to resolve internal grievance and criticism of work and conduct did not amount to ultimate employment decisions).

The Court does not find that Plaintiff's allegations related to the denial of research credit, the failure to resolve the scholarly misconduct complaint against him, or the failure to investigate

or allow him to file a counter-complaint are the type of ultimate employment decisions covered by Title VII. Rather, these are the types of activities that the *Messer* court held do not rise to the level of ultimate employment decisions. *Id.* The Court therefore finds that Plaintiff's Complaint should be dismissed with respect to these allegations.

Defendant likewise argues that the denial of additional pay raises for Plaintiff did not amount to an ultimate employment decision. Defendant relies on *Harrington v. Harris*, 118 F.3d 359, 366 (5th Cir. 1997) and *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 708 (5th Cir. 1997) for the contention that granting Plaintiff lower pay increases than other professors did not constitute the type of adverse action required to support a Title VII complaint. The Court disagrees with Defendant's analysis. *Harrington* involved an appeal of summary judgement in which, after considering the facts, the Court concluded that differences in merit pay increases were not actionable when the variations were not significant. 118 F.3d at 366. The Court, however, specifically stated that:

> If Plaintiffs had received no merit pay increase at all or if the amount of such increase were so small as to be simply a token increase which was out of proportion to the merit pay increases granted to others, we might reach a different conclusion. But *under the facts of this case* we are persuaded that the merit pay increases actually awarded to Plaintiffs cannot be considered as an adverse employment action.

*Id.* (emphasis added). The Court therefore found the issue of whether a pay increase could constitute an ultimate employment decision was a fact intensive inquiry, which, of course, is not appropriate at this stage.

In *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 192-94 (5th Cir. 2001), the Fifth Circuit, clarifying its holding in *Mattern*, held that denial of a pay increase can be an ultimate employment

7

action when the denial of the increase itself is alleged to be an ultimate employment action. In *Mattern*, the pay increase was not alleged to be an ultimate employment decision, but was only alleged to be an event leading to an ultimate employment decision. *Fierros*, 274 F.3d at 193 (quoting *Mattern* 104 F.3d 702). The Fifth Circuit has repeatedly held in cases since *Harrington* and *Mattern* that the denial of a pay increase can constitute an ultimate employment decision. *See Id.*; *Rubinstein v. Adm'rs of the Tulane Educ. Fund*, 218 F.3d 392, 402 (5th Cir. 2000) (upholding jury verdict that employer had unlawfully retaliated against a plaintiff by denying him a pay raise); *Mota v. Univ. of Houston Health Sci. Ctr.*, 261 F.3d 512, 521 (5th Cir. 2001) (finding that discontinuation of $2,500 stipend was a compensation decision, thereby qualifying as an adverse action).

Defendant also cites *Kang v. Bd. of Supervisors of La. St. Univ.*, 75 Fed. App'x 974, 976-77 (2003) for the proposition that a plaintiff's lesser pay increase is not actionable as long as the plaintiff received *some* pay increase. However, *Kang* is an unpublished opinion reviewing a summary judgment in which the Court stated "Although we have never explained precisely when denials of pay increases constitute ultimate employment decisions, *under the circumstances of this case*, we cannot say that Kang suffered an adverse employment action." 75 Fed. App'x at 977 (emphasis added). Further, in *Kang*, the plaintiff had received pay increases which were actually larger than those of some of his colleagues. *Id.* Whether or not the present case is distinguishable cannot be determined by viewing the pleadings alone.

The Court finds that Plaintiff has sufficiently alleged adverse actions to surpass the dismissal stage. The denial of a pay raise, under the law of this Circuit, can be the type of adverse action affecting compensation. Plaintiff alleges that he received standard pay raises while other, white

professors received additional pay raises. Defendant argues that Plaintiff is not complaining about being denied pay raises, but about being given smaller pay raises than other professors. The Court finds that for present purposes, the denial of an additional pay raise, beyond the standard pay raise, can be equated to the outright denial of a pay raise. Furthermore, the *Harrington* court found that if a pay increase is out of proportion to pay increases given to others, it may be actionable. 118 F.3d at 366. Plaintiff has therefore pleaded sufficient facts to establish an ultimate employment decision at this stage. While this issue may be dispositive of Plaintiff's case at summary judgment, the Court cannot decide, based on solely on the pleadings, whether or not the facts of this particular case will be such as will carry Plaintiff on to trial. Nevertheless, Plaintiff has pleaded a sufficient case to avoid dismissal.

## **RECOMMENDATION**

Based upon the foregoing, the Court recommends that Defendant's Motion for Judgment on the Pleading be GRANTED with respect to all alleged actions with exception of the alleged denial of additional pay raises on or after June 11, 2004. The Court recommends that, in all other respects, the above referenced motion be DENIED.

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or

manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 8th day of August, 2006.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE